**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | | |
|---|---|---|
| **SHARON BAUER, et al.,** | * | |
| | * | |
| Plaintiffs, | * | |
| v. | * | Crim. No. **PJM 20-1212** |
| | * | |
| **MARC ELRICH, et al.,** | * | |
| | * | |
| Defendants. | * | |

## MEMORANDUM OPINION

As part of Montgomery County, Maryland's response to the COVID-19 pandemic, its County Council appropriated $10 million for an Emergency Assistance Relief Payment (EARP) program. As the County Council explained, the public health emergency "has resulted in the immediate loss of income for many households as businesses have been required to close and people have been told to stay home," causing, it says, "a financial crisis for many County residents" that "may not be addressed through financial assistance provided by the federal or State government." ECF No. 28-4 at 66 (Resolution 19-439). The EARP seeks to address this crisis by providing one-time emergency assistance checks to individuals or families who (1) live in Montgomery County and need financial assistance to pay for food and essentials, (2) are not eligible for federal COVID-19 stimulus checks or state benefits, (3) are not eligible to receive unemployment benefits, and (4) have an income equal to or below 50% of the federal poverty level. *See* ECF No. 28-9.[1] The County Department of Health and Human Services (DHHS), which administers the program, distributes payments of $500 to eligible single adults, $1,000 to eligible

---

[1] Montgomery Cty. Dep't of Health & Human Servs., COVID-19: Emergency Assistance Relief Payment (EARP), https://www.montgomerycountymd.gov/HHS/RightNav/Coronavirus_EARP.html (last visited June 24, 2020). Fifty percent of the 2020 federal poverty level is an annual income of $6,380 for a single-person household and $13,100 for a family of four.

families with a child, and an additional $150 to families for each additional child, up to $1,450 total. *Id.*

Sharon Bauer and Richard Jurgena are Montgomery County taxpayers who seek to bar County Executive Marc Elrich and DHHS Director Raymond Crowel from implementing the program. They assert that the County specifically designed the EARP's eligibility criteria so that unlawfully present aliens are the primary recipients of the cash payments. As such, they say, the program runs afoul of 8 U.S.C. § 1621, which prohibits the provision of cash benefits to "unlawfully present aliens."

On May 15, 2020, the Court heard Oral Argument pertaining to Plaintiffs' Motion for Temporary Restraining Order. *See* ECF No. 19. On May 29, 2020, the Court denied Plaintiffs' request for the temporary injunction, but in doing so required Montgomery County to preserve at least twenty-five percent (25%) of the remaining EARP funds to ensure that that an appropriate amount of money remains undistributed so that the case may be effectively resolved after full airing of the issues on the merits. ECF No. 33.

The parties have now briefed the merits in full and have filed Cross-Motions for Summary Judgment. ECF Nos. 28 and 29, Responses in Opposition, ECF Nos. 38 and 39, and Reply briefs, ECF Nos. 41 and 42. No further hearing is necessary. *See* Loc. R. 105.6.

For the reasons that follow, the Court **GRANTS** Summary Judgment in favor of Defendants.

A.    **Summary Judgment Standard**

Under Federal Rule of Civil Procedure 56(a), a district court will grant summary judgment when, after viewing the facts in the light most favorable to the non-moving party, there is no genuine issue of material fact. *See* Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247-48 (1986). When reviewing cross-motions for summary judgment, each motion is to "be considered individually, and the facts relevant to each must be viewed in the light most favorable to the non-movant." *Mellen v. Bunting*, 327 F.3d 355, 363 (4th Cir. 2003). Here the parties are in agreement as to the underlying facts. *See* ECF No. 39, p. 2 n.2.

**B.      8 U.S.C. § 1621**

This case centers four-square on 8 U.S.C. § 1621, enacted by Congress as part of the Personal Responsibility and Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2260 (1996). The statute has four subparts. Subsection (a) of § 1621 declares that, generally, unlawfully present aliens are "not eligible for any State or local public benefit." 8 U.S.C. § 1621(a); *see also Mayor and City Council of Baltimore v. Trump*, 416 F.Supp.3d 452, 498 (D. Md. 2019) ("Section 1621 provides that immigrants who lack lawful status are not eligible for any State or local public benefit"). The full text of 8 U.S.C. § 1621(a) reads:

> Notwithstanding any other provision of law and except as provided in subsections (b) and (d), an alien who is not (1) a qualified alien (as defined in [8 U.S.C § 1641]), (2) a nonimmigrant under the Immigration and Nationality Act [8 U.S.C. § 1101 *et seq.*], or (3) an alien who is paroled into the United States under [8 U.S.C. § 1182(d)(5)] for less than one year, is not eligible for any State or local public benefit (as defined in subsection (c)).

8 U.S.C. § 1621(a).

Subsection (b) enumerates particular categories of benefits that are excepted from this prohibition, including "[a]ssistance for health care items and services that are necessary for the treatment of an emergency medical condition", "[s]hort-term, non-cash, in-kind emergency disaster relief," "[p]ublic health assistance for immunizations with respect to immunizable diseases and for testing and treatment of symptoms of communicable diseases," and certain "[p]rograms, services, or assistance (such as soup kitchens, crisis counseling and intervention, and short-term shelter) specified by the Attorney General…" 8 U.S.C. § 1621(b).

Sub-section (c) defines a "State or local public benefit" to include "any grant, contract, loan… retirement, welfare, health, disability, public or assisted housing, postsecondary education, food assistance, unemployment benefit, or any other similar benefit for which payments or assistance are provided to an individual, household, or family eligibility unit by an agency of a State or local government or by appropriated funds of a State or local government." 8 U.S.C. § 1621(c)(1)(A)-(B).

Subsection (d) sets out a generalized exception to subpart (a), that:

A State may provide that an alien who is not lawfully present in the United States is eligible for any State or local public benefit for which such alien would otherwise be ineligible under subsection (a) only through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility.

8 U.S.C. § 1621(d); *see also Texas v. U.S.*, 809 F.3d 134, 148-49 (5ᵗʰ Cir. 2015), *aff'd*, 136 S.Ct. 906 (2016) ("Unlawfully present aliens are generally not eligible to receive… state and local public benefits unless the state otherwise provides").

Plaintiffs, in the sole count of their Complaint, allege that "Defendants' program to disburse direct cash payments to unlawfully present aliens violates 8 U.S.C. § 1621(a)." ECF No. 11, ¶ 23.

Defendants do not dispute that the EARP benefits unlawfully present aliens.[2] They also do not assert that any of the exceptions of 8 U.S.C. § 1621(b) extend to the EARP's financial assistance payments nor do they argue that the EARP's disbursement of checks is somehow excluded from the definition of "State or local public benefit" within 8 U.S.C. § 1621(c). Instead, they aver that the EARP complies with the exception articulated in subsection (d) that "[a] State may provide that an alien who is not lawfully present in the United States is eligible for any State

---

[2] In fact, Defendants agree with Plaintiffs that "by the very nature of the eligibility criteria," "unlawfully present noncitizens or a similar term" "are one of the few groups who are eligible" to benefit from the EARP. ECF No. 28-2, p. 19.

or local public benefit… through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(d). Even though the Maryland General Assembly was not directly involved in the enaction of the EARP, Defendants submit that under the home-rule provisions of the Maryland Constitution, Montgomery County has the authority to enact locally applicable laws that have the force of state law. Any holding that § 1621(d) prohibits the use of EARP funds for the benefit of unlawfully present aliens, they say, would violate principles of federalism derived from the federal Constitution, including a State's right to structure its government in a manner of its choosing as well as the Tenth Amendment's anti-commandeering doctrine.[3]

Based the statute's text, structure, and legislative history, Plaintiffs argue that the EARP fails to comply with subsection (d)'s exception concerning "the enactment of a State law." 8 U.S.C. § 1621(d). They assert that Montgomery County is not a "State" and the Council's appropriation resolutions are not "State laws."[4] In terms of the Constitutional attack, Plaintiffs submit that 8 U.S.C. § 1621(d) does not command anything of States; rather it creates a mechanism for them to provide certain benefits to unlawfully present aliens within Congress's regulatory framework if they choose to do so. That framework, they say, is pursuant to Congress's exclusive authority over immigration and naturalization and is textbook cooperative federalism.[5]

---

[3] The anti-commandeering doctrine under the Tenth Amendment of the Bill of Rights holds that the Federal Government cannot force States to adopt or to enforce federal law in ways that go to the heart of their independent sovereignty. The doctrine has been referred to in recent cases involving legalized sports betting, sanctuary cities, and state regulation of marijuana. *See, e.g., Murphy v. National Collegiate Athletic Ass'n*, 138 S.Ct. 1461, 1475 (2018) ("The anticommandeering doctrine… is simply the expression of a fundamental structural decision incorporated into the Constitution, i.e., the decision to withhold from Congress the power to issue orders directly to the States").
[4] *See also* the Court's analysis of this argument in ruling on the Motion for Temporary Restraining Order, ECF No. 33, pp. 4-8.
[5] "Cooperative federalism" describes a system that "allows the States, within limits established by federal minimum standards, to enact and administer their own regulatory programs, structured to meet their own particular needs." *Hodel v. Virginia Surface Mining & Reclamation Association*, 452 U.S. 264, 289 (1981).

These are unquestionably serious arguments. But whether it is appropriate for the Court to assess them, it must first address whether Plaintiffs have satisfied standing to bring this suit. The Court indicated in its ruling on the requested Temporary Restraining Order that it would consider the matter of standing in connection with its merits ruling.

## C.    Jurisdiction and Standing

Plaintiffs originally filed suit in the Circuit Court of Montgomery County. *See* ECF No. 1. On May 13, 2020, the same day that they were served with the Complaint, Defendants removed the case to this Court, submitting that "[t]he Complaint alleges a federal question (alleged violation of 8 U.S.C. § 1621), which falls within the original jurisdiction of this Court under 28 U.S.C. § 1331." *Id.* ¶ 3. Section 1331, of course, provides that "district courts shall have original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States," otherwise known as subject-matter jurisdiction. 28 U.S.C. § 1331; *see also Burrell v. Bayer Corporation*, 918 F.3d 372, 378 (4th Cir. 2019). Plaintiffs did not file for remand. At Oral Argument on May 15, 2020, neither side posited that the Court lacked jurisdiction. *See generally* ECF No. 21. Indeed, their recent filings confirm that the parties concur that Plaintiffs' claim does in fact "arise under" 8 U.S.C. § 1621, since Plaintiffs' claim cannot be resolved without determining the substance of 8 U.S.C. § 1621 and whether Defendants have violated its terms. *See Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689-90 (2006) ("A case arises under federal law within the meaning of § 1331… if a well-pleaded complaint establishes either that federal law creates the cause of action or that the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law").

As far as Constitutional standing is concerned, the parties agree that the appropriate standards have been met. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992);

*DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 349 (2006). Prudential standing and private right of action are separate matters.

## D.      "Prudential Standing" and Private Right of Action

"Prudential standing" encompasses judge-made, rather than Constitutional, limits on suits that may be decided by federal courts. *See Bennett v. Spear*, 520 U.S. 154, 162 (1997). Although the Supreme Court recently portrayed the term "prudential standing" as "misleading" and a "misnomer," its underlying principles are still viable. *Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 572 U.S. 118, 127-28 n.4 (2014).[6] Pertinent here, Defendants argue that Plaintiffs Bauer and Jurgena must show that they "fall[] within the class of plaintiffs whom Congress has authorized to sue under" the pertinent federal law, namely 8 U.S.C. § 1621. *Id.* at 128. In other words, there must be a private right of action available for Plaintiffs to pursue their claim.

A private right of action to enforce federal law must be evident in the law itself, either expressly or implied by Congress' intent. *See Alexander v. Sandoval*, 532 U.S. 275, 286-87 (2001); *Qwest Comms. Corp. v. Maryland-Nat'l Capital Park & Planning Comm'n*, 2010 WL 1980153, at *5 (D. Md. May 13, 2010).[7]

Express private rights are ordinarily fairly straightforward; by way of illustration, the Americans with Disabilities Act makes clear that "[t]he remedies and procedures set forth… are provid[ed] to any person who is being subjected to discrimination on the basis of disability in

---

[6] *See also* Ernest A. Young, *Prudential Standing After Lexmark International, Inc. v. Static Control Components, Inc.*, 10 Duke J. Const. L. & Pub. Pol'y 149 (2014); *Bank of Am. Corp. v. City of Miami*, 137 S.Ct. 1296, 1302, (2017).

[7] In undertaking this analysis, the Court recognizes that in recent years the Supreme Court has cautioned that it has "adopted a far more cautious course before finding implied causes of action." *Ziglar v. Abasi*, 137 S.Ct. 1843, 1855 (2017). Indeed, "[t]o create a private right of action, Congress must 'speak with a clear voice' and the statute must 'unambiguously' express the intent 'to create not just a private right but also a private remedy.'" *Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 444 (4th Cir. 2014) (cleaned up) (*quoting Gonzaga Univ. v. Doe*, 536 U.S. 273, 280-84 (2002).

violation of this subchapter…" 42 § U.S.C. 12188(a)(1); *see Equal Rights Ctr. v. Abercrombie & Fitch Co.*, 767 F.Supp.2d 510, 521 (D. Md. 2010). No comparable conferral of private rights or remedies appears within 8 U.S.C. § 1621.

Implied rights of action are "a matter of statutory interpretation." *Profiles Inc. v. Bank of America Corp.*, --- F.Supp.3d ----, 2020 WL 1849710 *4 (D. Md. April 13, 2020). Courts look to the relevant statute's text and structure to intuit "whether Congress *intended to create a federal right*." *Clear Sky Car Wash LLC v. City of Chesapeake*, 743 F.3d 438, 443 (4th Cir. 2014) (emphasis original) (*quoting Gonzaga Univ. v. Doe*, 536 U.S. 273, 283 (2002); *see Northwest Airlines, Inc. v. Transport Workers Union*, 451 U.S. 77, 94 (1981). Generally, if Congress meant to create a federal right, the statute's "text must be phrased in terms of the persons benefited." *Gonzaga*, 536 U.S. at 284. For example, the Supreme Court has explained that § 601 of Title VI of the Civil Rights Act of 1964, which provides that "[n]o person shall, on the ground of race, color, or national origin… be subjected to discrimination," 42 U.S.C. § 2000d, "reveals congressional intent to create new rights." *Alexander*, 532 U.S. at 288-89; *see also Peters v. Jenney*, 327 F.3d 307, 315 (4th Cir. 2003). On the other hand, "[s]tatutes that focus on the person regulated rather than the individuals protected create 'no implication of an intent to confer rights on a particular class of persons.'" *Alexander*, 532 U.S. at 289 (*quoting California v. Sierra Club*, 451 U.S. 287, 294 (1981)).

The Tenth Circuit has applied this analytical framework to a suit pertaining to 8 U.S.C. § 1623, a statutory provision adjacent to the one at issue in the present suit. *See Day v. Bond*, 500 F.3d 1127 (10th Cir. 2007). Section 1623 provides that "an alien who is not lawfully present in the United States shall not be eligible on the basis of residence within a State… for any postsecondary education benefit unless a citizen or national of the United States is eligible for such a benefit…

without regard to whether the citizen or national is such a resident." 8 U.S.C. § 1623. The Tenth Circuit held that the statute "addresses itself to the institutions affected and their authority to provide benefits to illegal aliens, not to the class of nonresident citizens who incidentally benefit from its provisions" and that the text "entirely lacks the sort of rights-creating language critical to showing the requisite congressional intent to create new rights." *Day*, 500 F.3d at 1139 (*quoting Gonzaga Univ.*, 536 U.S. at 287).

Similarly, nothing in § 1621 indicates that Congress contemplated private enforcement of the statute. The text provides only that an unlawfully present alien "is not eligible for any State or local public benefit" unless a State "provide[s] that an alien who is not lawfully present in the United States is eligible… through the enactment of a State law after August 22, 1996, which affirmatively provides for such eligibility." 8 U.S.C. § 1621(a), (d). It contains no semblance of "rights-creating language," instead "focus[ing] on the person regulated," that is, unlawfully present aliens. *Alexander*, 532 U.S. at 288-289. As with § 1623, which *Day* found to be addressed to the entities that might provide the regulated education benefits, § 1621 is clearly directed at State and local governments with the authority to confer a "State or local public benefit," not to a class of potentially aggrieved persons or taxpayers more generally.

Plaintiffs, for their part, do not dispute that 8 U.S.C. § 1621 fails to establish a private right of action. *See* ECF No. 42, p. 2. Their argument is that their claim is not brought under § 1621; their cause of action, they say, is found in state common law pursuant to their rights as state taxpayers. Specifically, they point to *Floyd v. Mayor of Baltimore* for the proposition that Maryland taxpayers may "seek the aid of courts, exercising equity powers, to enjoin illegal and ultra vires acts of public officials where those acts are reasonably likely to result in pecuniary loss to the taxpayer," without the statute having to expressly recognize a private right of action. 205

A.3d 928, 937 (Md. 2019). Based on this Maryland common law claim, Plaintiffs assert, they may enjoin Defendants from using funds in violation of federal law.

Plaintiffs concede that the "vast majority of cases" in federal court involving private rights of action are suits "in which federal law creates the cause of action." *Burrell v. Bayer Corporation*, 918 F.3d 372, 380 (4th Cir. 2019) (*quoting Merrell Dow Pharmaceutical Inc. v. Thompson*, 478 U.S. 804, 808 (1986)). But, Plaintiffs say, their claim fits within the "slim category" of cases "in which state law supplies the cause of action but federal courts have jurisdiction under § 1331 because 'the plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law.'" *Burrell*, 918 F.3d at 380 (*quoting Franchise Tax Board of California v. Construction Laborers Vacation Trust*, 463 U.S. 1, 28 (1983)).[8] The Court disagrees.

Whether a federal statute is privately enforceable is up to Congress, not to State courts. As the Supreme Court recently reiterated, "[p]rivate rights of action to enforce federal law *must be created by Congress*.'" *Comcast Corp. v. Nat'l Ass'n of African Am.-Owned Media*, 140 S. Ct. 1009, 1015 (2020) (emphasis added); *see also Maine Cmty. Health Options v. United States*, 140 S. Ct. 1308, 1331 (2020) (Alito, J., dissenting) (explaining that the Supreme Court has "basically gotten out of the business of recognizing private rights of action not expressly created by Congress"); *In re Miller*, 124 Fed.Appx. 152, 154 (4th Cir. 2005) ("Private rights of action, explicit or implicit, to enforce federal laws *must be created by Congress*") (emphasis added). State law may not expand the scope of federal statutes beyond what Congress delineated by "borrow[ing]

---

[8] Plaintiffs ask the Court to evaluate their claim per the "four-part test" outlined in *Burrell v. Bayer Corporation* "that governs whether a lawsuit based on state-law claims gives rise to federal question jurisdiction." 918 F.3d at 379. It states that: "To come within § 1331, the case must feature a state-law claim that (1) 'necessarily raises' a federal issue, and that federal issue must be '(2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress.' *Id.* (*quoting Gunn v. Minton*, 568 U.S. 251, 258 (2013)). This test is inapposite. Assuming that, as Plaintiffs assert, Maryland taxpayer standing somehow provides a cause of action to enforce federal statutes – a proposition Plaintiffs have not cited a case to support and that the Court is not accepting – federal law does not permit federal courts to borrow State law causes of action to expand federal statutes beyond what Congress intended. *See Moor v. Alameda Cty.*, 411 U.S. 693, 702 (1973).

entire causes of action from state law." *Moor v. Alameda Cty.*, 411 U.S. 693, 702 (1973) (pertaining to the reach of 42 U.S.C. § 1988); *see also Berry v. City of Muskogee*, 900 F.2d 1489, 1503-04 (10th Cir. 1990) ("*Moor* may be read as a caution to plaintiffs and federal courts against borrowing of state-created causes of action").

If the Court were to accept Plaintiffs' proposition that State common law provides a cause of action to challenge the execution of § 1621, a federal statute, any Maryland taxpayer (or, for that matter, citizens of any State that similarly provides for general taxpayer suits) could challenge any State or local official's actions based on any federal statute, irrespective of the law's relevance to the individual litigant or to whether Congress intended for the statute to be enforced through the judicial branch at all. Bolstering the standing of taxpayers based on Maryland law would extinguish altogether the *raison d'etre* of prudential standing: "the general prohibition on a litigant's raising another person's legal rights, the rule barring adjudication of generalized grievances more appropriately addressed in the representative branches, and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked." *Lexmark Int'l,* 572 U.S. at 126; *Elk Grove Unified School Dist. v. Newdow*, 542 U.S. 1, 12 (2004)). Put simply, a State cannot manufacture a judicial right of action to enforce a federal statute where, as here, Congress has not affirmatively intended for a State to be able to do so nor clearly crafted one on its own volition. Finding otherwise would "embrace a dispute Congress has not assigned it to resolve," *Stoneridge Inv. Partners, LLC v. Scientific–Atlanta, Inc.*, 552 U.S. 148, 164 (2008), thereby upsetting "the proper – and properly limited – role of the courts in a democratic society," *Bennett v. Spear*, 520 U.S. 154, 162 (1997) (*quoting Warth v. Seldin*, 422 U.S. 490, 498 (1975)).

Having concluded that 8 U.S.C. § 1621 confers no private right of action, Plaintiffs may not maintain their suit pursuant to the statute. As such, there is no basis for the Court to consider

the remainder of the parties' arguments. The Court **GRANTS** summary judgment in favor of

Defendants County Executive Elrich and DHHS Director Crowel.[9]

       A separate Order will **ISSUE**.


                                        **/s/**

                         **PETER J. MESSITTE**
                  **UNITED STATES DISTRICT JUDGE**


**June 25, 2020**

---

[9] Plaintiffs ask that alternative to deciding the case on the merits the Court remand the case to State court. *See* ECF No. 1, p.5 n.4. Remand is not appropriate here because the Court has subject matter jurisdiction over the matter pursuant to 28 U.S.C. § 1331 and has definitively decided the case. *See Lexmark*, 572 U.S. at 128 n.4 (2014) ("the absence of a valid (as opposed to arguable) cause of action does not implicate subject-matter jurisdiction, i.e., the court's statutory or constitutional power to adjudicate the case"); *Steel Co. v. Citizens for Better Environment*, 523 U.S. 83, 89 (1998).